IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

LAKISHA ANN DOCTOR,

      Plaintiff,

          v.

CENTER FOR PRIMARY CARE,
P.C.,

      Defendant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

MAR 2 8 2025

CV 123-143    FILED

## O R D E R

Before the Court is Defendant's motion for sanctions.[1] (Doc. 20.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff worked for Defendant, a medical practice, from 2015 until she voluntarily resigned from her position as a clinical supervisor in April 2022. (Doc. 5, at 2-3.) This action arises out of events occurring during the last ten months of her employment. (Id. at 3-7.) While an array of factual allegations underpins Plaintiff's claims, the Court relays only those central to the instant motion.

---

[1] The Court acknowledges Defendant also has a pending motion for summary judgment (Doc. 34), but this Order addresses only the motion for sanctions.

According to Plaintiff, while employed by Defendant, she suffered racial discrimination and harassment from a supervisor (the "Supervisor") to whom she reported beginning in July 2021. (Id.) The Supervisor's conduct allegedly caused Plaintiff "tremendous emotional distress." (Id. at 7.) Plaintiff alleges she also experienced a miscarriage while working under the Supervisor. (Id.) After the Supervisor resigned in October 2021, Plaintiff applied for her newly vacant position but was not granted an interview. (Id. at 7-8.) On April 8, 2022, Plaintiff voluntarily resigned from employment with Defendant and began a new position as an allied health instructor at Miller-Motte College on April 11, 2022. (Doc. 20-2, at 5, 28.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 12, 2022, and received an EEOC Right to Sue letter on July 5, 2023. (Doc. 1, at 10, 12.) On September 12, 2023, counsel retained by Plaintiff for pre-suit negotiations sent Defendant a demand letter seeking $300,000 in settlement. (Id. at 13-14.) In that letter, Plaintiff's then-counsel wrote, "As you are aware, [Plaintiff] suffered a miscarriage during her employment with [Defendant], which may be attributable to stress caused by the discriminatory actions of [the Supervisor] and others." (Id. at 13.) Defendant declined to make a settlement offer, and on September 27, 2023,

Plaintiff's then-counsel terminated her representation of Plaintiff. (Id. at 15-17.)

Plaintiff initiated this action *pro se* on October 2, 2023, alleging claims against Defendant under Title VII of the Civil Rights Act of 1964. (Id. at 3.) In her initial complaint, Plaintiff stated, "I was pregnant and suffered a great loss because of my work environment. I miscarried . . . ." (Id. at 21.) Plaintiff attached a statement from her mental health therapist, which read in part, "In the midst of [Plaintiff] trying to discover ways to manage her stressed and hostile work environment[,] she also experienced a miscarriage late October, 2021." (Id. at 23.)

Because Plaintiff initially proceeded *pro se*, the Magistrate Judge provided her some basic instructions regarding her responsibilities in this case. (Doc. 3.) One such instruction directed Plaintiff "to cooperate fully in any discovery that may be initiated by Defendant." (Id. at 2.) The Magistrate Judge also informed Plaintiff that "giving evasive or incomplete responses to questions [during her deposition] will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case." (Id.)

On October 13, 2023, Attorney Nina Maja Bergmar filed a notice of appearance on Plaintiff's behalf (Doc. 4), and on October 26, 2023, Plaintiff filed an amended complaint (Doc. 5). Plaintiff bases her claims on the Supervisor's conduct toward her and on

3

Defendant's subsequent decision not to hire her for the supervisory opening.    (Doc. 5, at 10-14.)    She alleges she "was under tremendous emotional distress" due to the alleged discrimination and that she "suffered a miscarriage during this time period." (Id. at 7.)    Plaintiff's claimed compensatory damages include up to one million dollars for emotional pain and suffering.    (Doc. 30-2, at 4.)    She seeks neither back pay nor front pay, as she began comparable employment immediately following her separation from Defendant.    (Id. at 3-4.)

During discovery, Plaintiff produced some medical records from West Augusta Obstetrics & Gynecology PC ("Plaintiff's OB/GYN" or "her OB/GYN").    (Doc. 28-2.)    Plaintiff's counsel redacted irrelevant portions of the records but left visible a note from October 27, 2021, stating "Incomplete abortion."    (Id. at 13; Doc. 28, at 6-7.)    Plaintiff was deposed on May 6, 2024, and Defendant's counsel questioned her regarding the alleged miscarriage.    (Doc. 20-2, at 50-51.)    Plaintiff testified she miscarried twice in October 2021 and that she had never previously experienced a miscarriage.    (Id.)    When asked what doctors she sought treatment from relating to the allegations in her complaint, Plaintiff only indicated she saw her OB/GYN and her mental health therapist.    (Id. at 73.)    And when asked if she had "any procedure following [her] miscarriage," Plaintiff responded she did not and had "just waited

it out." (Id. at 52.) Finally, Plaintiff expressed opposition to Defendant obtaining her complete medical records:

> Q: Do you have any objection to me obtaining . . . your complete medical records?
>
> A: Yes.
>
> [. . .]
>
> Q: Why?
>
> A: Because if it's not relevant to this case, there's no need for you to know everything in my medical history.

(Id.)

Following Plaintiff's deposition, and upon notice to Plaintiff, Defendant subpoenaed Plaintiff's OB/GYN for copies of her full medical records from January 1, 2021, through June 30, 2022. (Doc. 20, at 3; Doc. 20-5, at 1-6.) Defendant asserts, and Plaintiff does not dispute, that the responsive records included additional documents not previously produced by Plaintiff. (Doc. 20, at 4; Doc. 28.) The records reflect that Plaintiff had a positive pregnancy test on September 16, 2021; on October 6, 2021, Plaintiff's OB/GYN wrote that Plaintiff stated "she [did] not want to have any more children" and "will pursue termination"; and Plaintiff's OB/GYN then "advised [Plaintiff] to find a Planned Parenthood." (Doc. 20-5, at 20, 28.) The records also show that on October 26, 2021, Plaintiff reported to her OB/GYN that she had an abortion on October 23, 2021. (Id. at 30.) Defendant provided these records to Plaintiff's counsel on May 28, 2024. (Doc. 30,

at 6.)    On August 26, 2024, Plaintiff's counsel produced new records from a Planned Parenthood clinic indicating Plaintiff underwent an abortion procedure on October 23, 2021. (Doc. 20-7, at 5; Doc. 28-1, at 2 (identifying clinic as Planned Parenthood).) Those records also state Plaintiff reported medical treatment related to a miscarriage in 2013. (Doc. 20-7, at 3.)

Defendant filed the instant motion on July 23, 2024, urging the Court to impose sanctions because of Plaintiff's false assertions regarding her alleged miscarriage in her amended complaint and deposition.[2]   (Doc. 20, at 1.)   Plaintiff responded (Doc. 28), and Defendant replied (Doc. 30; Doc. 31).   The deadline for briefing having passed, Defendant's motion is ripe for the Court's review.

## II. MOTION FOR SANCTIONS

Defendant contends Plaintiff offered false statements in her complaint, amended complaint, and deposition regarding her alleged miscarriage, and that she failed to produce or timely alert Defendant to the existence of relevant medical records. (Doc. 20, at 1, 7; Doc. 30, at 3-9.)   Defendant urges this Court to impose sanctions pursuant to Federal Rules of Civil Procedure 11(c)(2),

---

[2] Defendant states, and Plaintiff does not dispute, it served this motion upon Plaintiff's counsel more than twenty-one days prior to filing it with the Court, thereby satisfying the good-faith conference requirements of Local Rule 26.5 and Federal Rule of Civil Procedure 37(a)(1). (Doc. 20, at 1; Doc. 28, at 1.)

41(b), and 37(b); 28 U.S.C. § 1927; and the Court's inherent authority. (Doc. 20, at 1.) Defendant contends dismissal is a proper sanction for the conduct at issue, and, if the Court declines to grant dismissal, Defendant requests the Court impose monetary sanctions against Plaintiff, Plaintiff's counsel, or both. (Id.)

Plaintiff argues Defendant's accusations of falsity are misplaced, reasserts she experienced a miscarriage, and blames any discrepancies between her testimony and her medical records on misunderstandings and the "extremely traumatizing" nature of the facts involved. (Doc. 28, at 3; Doc. 28-1, at 4.) Furthermore, Plaintiff argues neither she nor her counsel "has prevented Defendant from obtaining copies of Plaintiff's complete medical records." (Doc. 28, at 7.) As such, Plaintiff argues the Court should decline to impose sanctions, or, alternatively, defer ruling on sanctions until the end of the proceedings. (Id.)

The Court will not defer ruling on Defendant's motion until the end of the proceedings. Courts in this Circuit have held that "Rule 11 sanctions based on the factual adequacy of a complaint are best considered at the end of litigation, after the parties . . . have been given notice and an opportunity to identify any genuine issues of material fact." Thomas v. Evans, 880 F.2d 1235, 1243 n.11 (11th Cir. 1989) (citation omitted). Here, however, Defendant's motion is not only based on the factual

7

adequacy of the complaint, but largely upon Plaintiff's deposition testimony and candor throughout the proceedings thus far. Therefore, the Court declines to defer ruling.

Next, the Court clarifies two points before proceeding further. First, the Court is not a medical expert. It therefore declines any invitation to interpret Plaintiff's medical records and conclude whether she had an involuntary miscarriage, a voluntary abortion, or some combination of the two. The only question before the Court is whether Plaintiff's litigation conduct regarding the alleged miscarriage and her related medical records warrants imposition of sanctions.

Second, Defendant requests sanctions under various Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. (Doc. 20, at 1.) Upon reviewing the Parties' briefs, the Court finds the most appropriate course is to proceed under its inherent authority. See Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991) ("[A] federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.").

Federal courts' inherent power to sanction exists "to protect the orderly administration of justice and to preserve the dignity of the tribunal." Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1209 (11th Cir. 1985) (citing Roadway Express, Inc. v. Piper,

447 U.S. 752, 764-65 (1980)). This power "must be exercised with restraint and discretion," Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (citing Roadway Express, 447 U.S. at 764), and only upon finding the aggravating party acted in bad faith, Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002) (citation omitted). If bad faith is found, the district court must then "fashion an appropriate sanction." Githieya v. Glob. Tel*Link Corp., 608 F. Supp. 3d 1290, 1298 (N.D. Ga. 2020) (quoting Chambers, 501 U.S. at 32). The Court therefore first considers whether Defendant has established Plaintiff acted in bad faith.

## A. Whether Plaintiff Acted in Bad Faith

The inherent power's bad faith standard is a subjective one. Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017). Bad faith, which is more than recklessness alone, may be established by either direct or circumstantial evidence. Id. A party's false statement "can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose." Byrne v. Nezhat, 261 F.3d 1075, 1125 (11th Cir. 2001); see, e.g., Stimson v. Stryker Sales Corp., No. 1:17-CV-872, 2019 WL 11273240, at *9-10 (N.D. Ga. Nov. 12, 2019), aff'd, 835 F. App'x 993 (11th Cir. 2020) (finding bad faith warranting sanctions when plaintiff offered false deposition testimony regarding key

evidence and offered no explanation in response to motion for sanctions).

The Court finds Plaintiff acted in bad faith. The evidence shows Plaintiff stated in her demand letter, initial complaint, and amended complaint that she experienced a miscarriage during the time she suffered the alleged discrimination. (Doc. 1, at 13, 21, 23; Doc. 5, at 7.) Further, in response to direct questioning during her deposition, Plaintiff denied ever experiencing a miscarriage before October 2021, denied receiving medical care related to the allegations in her amended complaint from anyone besides her OB/GYN and her therapist, and denied undergoing any medical procedures following her alleged miscarriage. (Doc. 20-2, at 51-52, 73.) However, Plaintiff's medical records from Planned Parenthood indicate she experienced a miscarriage during or before 2013, received medical care relating to the end of her October 2021 pregnancy from providers at Planned Parenthood, and underwent an abortion procedure on the day she claims the miscarriage occurred. (Doc. 20-7, at 3, 5.) Furthermore, Plaintiff only requested and produced the Planned Parenthood records after Defendant conducted Plaintiff's deposition, subpoenaed Plaintiff's full records from her OB/GYN, identified the physician's note therein regarding the Planned Parenthood referral, and filed the instant motion for sanctions. (Id. at 2; Doc. 31, at 1-2.)

Plaintiff offers several justifications for her omissions and falsities. First, she avers she simply misunderstood the question when she testified she did not have any medical procedure following her alleged miscarriage. (Doc. 28, at 3.) But the questions and answers were straightforward:

> Q: Ms. Doctor, did you have to have any procedure following your miscarriage?
>
> A: No.
>
> Q: Nothing like a D&C or anything?
>
> A: I did not want to pay for it[,] so I just waited it out.

(Doc. 20-2, at 52.) Even if Plaintiff was confused regarding the "D&C" abbreviation, the Court finds the clear nature of the first question, Plaintiff's logical answers, and her extensive work history in the medical field render implausible any other conclusion but that Plaintiff knew what was being asked when she responded "no."

Plaintiff also contends that, though she underwent the abortion procedure at Planned Parenthood, she "did not lie about suffering a miscarriage." (Doc. 28, at 4.) In a declaration filed in response to Defendant's motion, Plaintiff clarifies that she scheduled an abortion at Planned Parenthood, but when she arrived, the staff believed she had already miscarried that morning. (Doc. 28-1, at 2.) Regardless of whether and when Plaintiff did or did not suffer a miscarriage, the fact remains that she now admits to

having an abortion procedure, which she denied in her deposition, by a medical provider whose identity she failed to disclose during her deposition, and that she had a miscarriage before October 2021, which she also denied in her deposition.

Plaintiff points out that her alleged miscarriage relates to her requested damages rather than the merits of her underlying claims. (Doc. 28, at 1, 4.) However, "[f]ederal courts have the inherent power to [impose sanctions] for misconduct that abuses the judicial process and threatens the integrity of that process— including misconduct unrelated to the merits of the case." Vargas v. Peltz, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962)). Regardless of the elements of Plaintiff's Title VII claims, the Court notes the role the alleged miscarriage would play in damages. Plaintiff seeks up to one million dollars in compensatory damages for "emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and loss of health." (Doc. 30-2, at 4.) And her amended complaint and deposition testimony tie her emotional distress, at least in part, to the alleged miscarriage. (Doc. 5, at 7; Doc. 20-2, at 73.) Plaintiff's consistent claims that she suffered a miscarriage, beginning with her September 2023 demand letter and continuing through her response to the instant motion, indicate she views the alleged miscarriage as important, if not central, to her claim for compensatory damages. (Doc. 1, at 13; Doc. 28, at

1.)  This inference is bolstered by Plaintiff's recalcitrance in providing Defendant any information about her appointment with Planned Parenthood, despite Defendant's multiple questions about the subject.  (Doc. 20-2, at 52.)

Considering the record as a whole, the Court finds Plaintiff's false deposition testimony and failure to timely disclose information directly tied to her claim amount to more than mere negligence or confusion.  Quite simply, Plaintiff lied to her opponent and manipulated the discovery process in order to maintain an overinflated claim for damages.  Plaintiff has acted in bad faith, and the Court must determine what sanction should be imposed.

## B. Fashioning an Appropriate Sanction

Defendant asks the Court to impose the "ultimate sanction": dismissal of Plaintiff's case.  (Doc. 20, at 1); Chemtall, Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1409 (S.D. Ga. 1998).  In the alternative, Defendant requests the Court impose monetary sanctions on Plaintiff, her counsel, or both.  (Doc. 20, at 1.)

A court's inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Githieya, 608 F. Supp. 3d at 1298 (quoting Chambers, 501 U.S. at 44-45).  Possible sanctions include dismissal, imposition of attorney's fees and costs, and other "remedial directives" tailored to the specific bad faith conduct.  Id. at

1298, 1331-32 (assessing costs, striking portions of filings containing bad faith misrepresentations, and prohibiting sanctioned party from amending or filing further briefings on the issue as a sanction under the court's inherent authority). "The severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1306 (11th Cir. 2006) (citation and internal quotation marks omitted).

Here, Plaintiff's conduct is not only unbecoming to the judicial process, but it has also drained the time and resources of Defendant and now the Court. The Court nevertheless declines to dismiss her case because a less drastic sanction will adequately address Plaintiff's behavior. As a sanction for her conduct, the Court imposes the following. First, Plaintiff is prohibited from introducing evidence of her alleged miscarriage should this case proceed to trial. Second, any references to the alleged miscarriage will be stricken from Plaintiff's response to Defendant's pending motion for summary judgment. And third, the Court awards Defendant attorney's fees and costs incurred in subpoenaing Plaintiff's full OB/GYN medical records in May 2024 and in litigating its motion for sanctions.

This sanction underscores to Plaintiff that candor in judicial proceedings and fairness to her opponent are of utmost

14

importance in any action before the Court. It also serves as a warning against similar conduct by other litigants who would attempt to gain an advantage by perpetuating false narratives. Finally, it relieves Defendant of the financial burden of addressing Plaintiff's deceit and protects Defendant from incurring future litigation costs related to the alleged miscarriage.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for sanctions (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DENIES** Defendant's request to dismiss Plaintiff's case. The Court **GRANTS** Defendant's motion by finding sanctions appropriate and **AWARDS** Defendant attorney's fees and costs associated with subpoenaing Plaintiff's full OB/GYN medical records in May 2024 and litigating the motion for sanctions. Plaintiff is also prohibited from introducing evidence of her alleged miscarriage should this case proceed to trial, and any references to the alleged miscarriage are stricken from Plaintiff's response to Defendant's pending motion for summary judgment.

Defendant is **DIRECTED** to submit, within **seven (7) days** of the date of this Order, a detailed accounting of all costs and fees incurred as described above, with an appropriate affidavit attached thereto. Plaintiff will then have **seven (7) days** from

15

the date of Defendant's submission to file any objections.  Upon
reviewing all necessary materials, the Court will enter an order
awarding just costs to Defendant.

 ORDER ENTERED at Augusta, Georgia, this _28th_ day of March,
2025.

 _____
 HONORABLE J. RANDAL HALL
 UNITED STATES DISTRICT JUDGE
 SOUTHERN DISTRICT OF GEORGIA